GRIEBEL v. IMBODEN, Appellant.

Division One, December 11, 1900.

1. **Note:** LIABILITY: PLEDGE: ASSET    One Heimann made a note to Schnurmacher, for $3,700 and secured it by a mortgage, and defendant, at Heimann's request, bought it for $2,000, and on its becoming due Heimann made another note to defendant for $2,000, in which it was recited that Heimann had "deposited or pledged with" defendant the other note for $3,700 and the mortgage securing the same "as collateral security," and "in the event of the non-payment of this note" for $2,000 at maturity, "the holder is hereby invested with full authority to use, transfer, sell or convey said collaterals." This note was not paid at maturity, and was extended from time to time for 30 days by the payment of $30, which the parties called "commissions." Afterwards plaintiff sued Heimann in attachment, which was sustained, and then defendant was summoned as garnishee, and judgment rendered against him for the amount of the $3,700 note, on the theory that it was an asset of Heimann pledged to the garnishee to secure the payment of the $2,000 note, and that the payments by Heimann of the $30 per month for extensions were usury, and therefore the pledge of the $3,700 note, under the statute, became invalidated, and the note was wrongfully held by the defendant. *Held*, that in no sense could the promissory not of Heimann for $3,700, a mere liability of his, become an asset, but remained a liability until paid, and the defendant could not be compelled to bring the $3,700 note into court for the benefit of any attaching creditor of Heimann's, or be held to pay the amount thereof. *Held*, also, that despite the name or designation of "pledge" given to the transaction, its real character was not changed or transformed thereby. *Held*, also, if the $3,700 note was by this $2,000 note acknowledged

to be paid, or as belonging to Heimann reissued by him, it was either a dead note, or in the hands of plaintiff could be worth no more than it would be in Heimann's hands, which would be absolutely nothing. *Held,* also, that even were it a pledge it could not be invalidated in a suit by a stranger to the note.

2. **Usury:** PLEDGE: GENERAL CREDITOR. A general creditor can not invoke the provisions of section 3710, R. S. 1899, in a garnishment proceeding, to invalidate a pledge, given by his debtor to a third party (the garnishee) to secure an obligation upon which usury has been exacted by that third party. That privilege is by the statute conferred upon the debtor alone or upon him and his privies in estate or blood, but is unavailing to a creditor or stranger. (Separate opinion by ROBINSON, J.)

Appeal from St. Louis City Circuit Court.—*Hon. Leroy B. Valliant,* Judge.

REVERSED.

*Carl Otto* for appellant.

(1) In 27 Am. and Eng. Ency. of Law, p. 949 is found this statement: "It is settled by a multitude of decisions that the right to plead usury is a privilege personal to the debtor." Webb on Usury, sec. 365; Tyler on Usury, p. 403; Ransom v. Hays, 39 Mo. 445; Hill v. Taylor, 125 Mo. 331; Vette v. Geist, 55 S. W. Rep. 871. (2) The finding was for the wrong party, and should have been for garnishee. Because there was no evidence to show the garnishee had any goods, chattels, moneys, credits or effects belonging to the defendant, Heimann, nor was garnishee indebted to Heimann, nor was he bound in any contract to pay defendant any money. Can a man's own debts be assets, etc. ? (3) The evidence showed Heimann made a note payable to the order of Annie C. A. Griebel for $3,700 secured by a deed of trust from Heimann and wife upon Heimann's land; that this note

was indorsed by Griebel and was in the possession of Mr.
Schnurmacher, and that garnishee, at the request of Hei-
mann, paid into a trust company $2,000 and the trust com-
pany delivered certain securities to Mr. Schnurmacher, and
then Mr. Schnurmacher delivered the above securities to gar-
nishee, and thereafter a collateral note was executed by Hei-
mann to garnishee pledging above securities, already in the
hands of garnishee. Heimann could not have recovered these
without first paying this debt, stripped of usury, and plaintiff
can not have greater rights in the premises than Heimann,
whether the collateral note is void or not.

*Lange & Senn* and *Rassieur & Buder* for respondent.

(1) To provide for an affirmative action for relief from
an "invalid and illegal" pledge of personal property. Act
1891, p. 170, sec. 2 (R. S. 1899, sec. 3710); Wintergirst v.
Loan Co., 60 Mo. App. 166; Johnson v. Simmons, 61 Mo.
App. 395; Voorhis v. Staed, 63 Mo. App. 370; Hilgert v.
Levin, 72 Mo. App. 51; M. K. & T. Trust Co. v. Krumseig,
40 U. S. App. 633. (2) To render such "invalid and ille-
gal" pledge of no force whatsoever and a nullity. American
Co. v. Wilson, 55 Mo. App. 659; Wintergirst v. Loan Co., 60
Mo. App. 169; Voorhis v. Staed, *supra;* Smith v. Mohr, 64
Mo. App. 45; Hilgert v. Levin, *supra;* Mackey v. Holmes, 52
Fed. Rep. 723; 2 Bouvier's Law Dic. (Rawle's Rev.), p.
1200, "Void;" Fidelity v. Baker, 54 Mo. App. 79. (3)
That to the action of garnishment by plaintiff (privy of the
defendant debtor) there was no right of set-off against the
property pledged in favor of the usurious creditor. Hilgert
v. Levin, 72 Mo. App. 51; Voorhis v. Staed, 63 Mo. App.
374; 27 Am. and Eng. Ency. of Law, (1 Ed.), p. 946,
"Usury;" Mackey v. Holmes, 52 Fed. Rep. 723, 724; Work-

man v. Warder, 28 Mo. App. 7; Smith v. Mohr, 64 Mo. App. 46; American Co. v. Wilson, 55 Mo. App. 659; State, etc. v. Modrell, 15 Mo. 421; Brake v. Corning, 19 Mo. 125; Pratt v. Menkens, 18 Mo. 158; May v. Kellar, 1 Mo. App. 381; Reppy v. Reppy, 46 Mo. 571; Barnes v. McMullins, 78 Mo. 260; Lane v. Bailey, 47 Barb. 402.    (4) That the plaintiff, as attaching creditor of the defendant Heimann, was in privity with him and entitled to show the "invalid and illegal" character of the lien of garnishee Imboden's pledge.    American Co. v. Wilson, 55 Mo. App. 659, 660, 661; Voorhis v. Staed, 63 Mo. App. 374; Coleman v. White, 69 Mo. App. 535, 536; Jones on Mortgages, sec 644.    (5) Construction and interpretation of statutes:  Bowers v. Smith, 111 Mo. 45; Kane v. Railroad, 112 Mo. 34; State ex rel. v. Field, 112 Mo. 54; Ross v. Railroad, 111 Mo. 18; St. Joseph v. Landis, 54 Mo. App. 315; Fosburgh v. Rogers, 114 Mo. 122; Greer v. Major, 114 Mo. 155; State ex rel. v. Finn, 8 Mo. App. 341.

ROBINSON, J.—This is a proceeding by garnishment begun in the circuit court of the city of St. Louis in aid of an attachment suit brought by the plaintiff against defendant T. W. Heimann in February, 1897.  Judgment was rendered on the merits in the attachment suit against defendant Hiemann in June, 1898, on two counts, in the aggregate sum of of $5,312.18, from which no appeal was taken.

The writ of garnishment was served on the appellant herein in February, 1897, made returnable to the April term, 1897, of the circuit court, at which time the usual statutory interrogatories were filed, and the garnishee, Imboden, answered thereto in substance as follows:

That he did not have in his possession any goods, chattels, etc., of the defendant now or at any time since the service of garnishment upon him; that he was not at the time of the

service of garnishment, has not been since, and is not now in anywise indebted to the defendant, Heimann, but says that long prior to the service of garnishment upon him at defendant's request, he advanced $2,000 to take up defendant's outstanding obligations for $3,700 and that on account of said advancement he and defendant entered into the following written contract:

"$2,000.            "St. Louis, Mo., July 9th, 1896.

"Thirty days after date I promise to pay to the order of L. E. Imboden, two thousand and no hundredths dollars, for value received, negotiable and payable without defalcation or discount, at the Chemical National Bank, with interest after maturity at the rate of eight per cent per annum, he having deposited or pledged with L. E. Imboden as collateral security for the payment of this note:    One deed of trust, and one note for $3,700, executed by F. W. Heimann, dated February 26, 1893, and extended to February 26, 1899, also examination of title and insurance policy.

"Now, in the event of the non-payment of this note at maturity, the holder hereof is hereby invested with full authority, to use transfer, hypothecate, sell or convey the said collaterals, or any collaterals substituted for or added to the above, or any part thereof, or to cause the same to be done, at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the said holder hereof may deem best, and the holder of this note is authorized to purchase said collaterals when sold for his own protection, and the proceeds of such sale, transfer or hypothecation shall be applied to the payment of this note, together with all protests, damages, interest, costs and charges due upon the note, or incurred by reason of its non-payment when due, or in the execution of this power.    The surplus, if any, after payment of this note, together with all charges above stated,

shall be paid to the drawer of this note, or at the election of the holder hereof, be paid on any other obligation of the drawer hereof, whether as principal debtor or otherwise, held by the holder hereof, and if the proceeds of the above sale shall not be sufficient to pay this note, the drawer hereof agrees to make good any deficit. In case of depreciation in the market value of any security pledged for this obligation, he hereby agrees to deposit on demand a further amount of collateral, so that the market value shall always be at least ten per cent more than the amount of this note, and failing to deposit such additional security, this note shall be deemed to be due and payable forthwith, anything hereinbefore expressed to the contrary notwithstanding, and the holder may immediately reimburse himself by the sale of the security.

"Fred W. Heimann."

The plaintiff, respondent herein, filed her denial to the foregoing answer of garnishee, charging among other things not necessary to be considered here, that if the loan of $2,000 from Imboden to Heimann was made, the interest exacted and received by said Imboden for such loan or indebtedness was and is usurious, and prayed judgment for the delivery to her of the $3,700 note and deed of trust named therein, or on failure to deliver same, for a money judgment. Upon the issues as thus made the case proceeded to a trial and the court rendered judgment in favor of plaintiff and against garnishee; and ordered that garnishee deliver the note of $3,700 and deed of trust securing same into court on or before January 14, 1898 to await its further order and judgment. On February 18, 1898, the garnishee having failed to comply with the court's order, judgment was rendered against him for the face value of the note and the accumulated interest on same at that time due and unpaid, amounting in the aggregate to $3,931.87 from which judgment the garnishee after the usual steps appealed the case to this court.

Notwithstanding the language of the averments of garnishee's answer setting out his dealings with the defendant, his relation to the $2,000 and the $3,700 notes, and how the latter note was obtained, when the true state of the facts are brought to light by the testimony (regardless of garnishee's characterization of them) the judgment of the trial court can not be sustained.

The simple facts of the case as gathered from the record are these: In February, 1893, the defendant Heimann made his note payable to the order of the plaintiff herein, Mrs. Annie Griebel, for $3,700, due three years after date, and to secure same a deed of trust was given upon certain property in the city of St. Louis, owned by the defendant Heimann. In time this note was indorsed by Mrs. Griebel, the payee therein, and through a course of negotiation not disclosed by this record, came into the possession of one B. Schnurmacher and was owned and held by him on the 9th day of July, 1896, when the defendant Heimann induced the garnishee herein, L. E. Imboden, to buy this $3,700 note; or as the witness expresses it, to advance $2,000 to take up the note, Heimann agreeing to pay Imboden eight per cent on the money so advanced by him in taking up or buying the note, and promising in addition to pay him $30 per month by way of a commission (as it is called by the witnesses) so long as the amount of the advancement remained unpaid. Imboden paid the $2,000 to Schnurmacher, or rather to the Mississippi Valley Trust Co., for Mr. Schnurmacher, and Mr. Schnurmacher delivered to him the $3,700 note of defendant, and the deed of trust securing same. The defendant Heimann then executed and delivered to the garnishee Imboden the contract or note set out in his answer.

When by the terms of this writing, called a collateral note, the two thousand dollars named therein (which represented the amount the garnishee had advanced to take up or

purchase of Schnurmacher the $3,700 note), became due, defendant could not pay same, and an extension of thirty days longer within which to pay it was asked by defendant, which was granted, upon his paying to the garnishee an additional $30 by way of what they called a commission charge. Several other thirty day extensions were granted on the note and at each extension the thirty dollar commission was exacted by the garnishee and paid by the defendant Heimann.

In January, 1897, the garnishee refused to grant to the defendant any further extension of time upon the so-called collateral note of two thousand dollars, and under the terms and powers vested in garnishee by that instrument he advertised and offered for sale the $3,700 note and deed of trust (which he had previously purchased of Schnurmacher and at all times thereafter held and retained the control and custody of) and as he says became the purchaser thereof for the alleged consideration of $2,030. At the time of the service of the writ of garnishment upon the garnishee Imboden, in February, 1897, he still held both the $2,000 note made to him by the defendant and the note of the defendant for $3,700 which he had gotten from Schnurmacher. The real estate named in the deed of trust securing the thirty seven hundred dollar note of defendant was shown to be worth from four thousand to forty-five hundred dollars, and nothing was made to appear showing that any part of the principal of the note was ever paid.

Under this state of facts the trial court, after finding that the garnishee, in good faith and with no design or intention on his part, to assist defendant in hindering and delaying or defrauding his creditors in the collection of his debt, did advance the two thousand dollars with which to buy or take up the $3,700 note of defendant in the hand of Schnurmacher, rendered judgment, as above indicated, in favor of plaintiff

and against the garnishee and ordered that he deliver said $3,700 note and deed of trust securing same, into court on or before the 14th of January, 1898, to await its further order and judgment, and upon the failure of the garnishee to comply with said order on said day rendered judgment against him for $3,931.87, the full value of the note and the unpaid accumulated interest on same up to that date, upon the theory, as indicated by the instruction given and refused, that the $3,700 note and deed of trust securing same, held by garnishee, was an asset of defendant, pledged to garnishee to secure the payment of the two thousand dollar note of defendant also held by him, and that on account of the usury connected with said $2,000 note, the pledge of the $3,700 note became invalidated by the act of 1891, now section 3710, Revised Statutes 1899, and was wrongfully held by garnishee, and that the plaintiff as a general creditor of the defendant in this character of proceeding, had the right, under said act, to show garnishee's usurious exaction upon the two thousand dollar note to defeat his claim to the pledge hypothecated to secure same. In our opinion, the action of the trial court and the contention now made by respondent to sustain same, are wrong in every particular.

I. In the first place, the $3,700 note of defendant held by garnishee could in no sense be considered and treated as an asset of defendant in the hands of garnishee. The designation of it as a pledge in the two thousand dollar note held by garnishee set out in his answer does not operate to change its real character, or to convert the liability imposed by it upon defendant, by its issue and circulation, into an asset of the defendant, available as a pledge to secure the payment of a principal obligation in the hands of the garnishee. The $3,700 note was not an asset of defendant, but a liability of his, coming to the hands of garnishee, by reason of his pay-

ment or advancement of $2,000 to Schnurmacher, the former owner and holder of the note, which liability it is true the garnishee agreed with the defendant he could redeem or discharge by the payment to him in thirty days the amount that he was out on account of the purchase of the note from Schnurmacher, and the additional sum of $30 per month so long as he would carry same, made as a so-called commission charge.

Despite the name and designation given to the transaction, its real character is not changed or transformed. It is certainly a most novel proposition that because the parties dealing with a note of the defendant's call, name or designate it in such a manner, that ordinarily it would indicate an asset of defendant, it in fact becomes an asset, attachable as such by a third party.

While calling the $3,700 note a pledge would indicate that it was an asset of the defendant, a thing of value of the pledgor in the hands of the pledgee to secure the payment of some demand owing, or some obligation to be performed, of necessity it must be otherwise. As long as the note has life it must even remain a liability against defendant, and can never become an asset of his. To get, own, or be entitled to its possession by defendant would work its extinction for all purpose, and its character can not be transferred by naming or designating it as a pledge.

II. But if we now suppose that this $3,700 note had been taken up by the defendant, and that same had been reissued and given to garnishee as a pledge to secure the $2,000 obligation of defendant due on account of the money advanced by garnishee for the defendant, and that the plaintiff could show the usurious exaction by garnishee of defendant on account of said $2,000 note to invalidate the pledge in garnishee's hand, what better would be plaintiff's condition? If

the pledge of the $3,700 note became invalidated in garnishee's hand so that defendant would be entitled to its possession on account of the usury exacted by garnishee on the principal obligation, it must in contemplation of law be then again treated as a satisfied or dead obligation of defendant's; neither an asset nor a liability of the defendant, and being a thing of no value, no judgment could be awarded against garnishee for the failure to deliver same into court.     Plaintiff's rights under the note could be no greater than defendant's, through whom alone he can claim by his writ of garnishment.   Would not the plaintiff, if allowed to recover here, be obtaining greater right than the defendant Hiemann has or could maintain?   If Hiemann had sued garnishee for his note of $3,700 and obtained a judgment, he would get what? The return of his own note, or its value to him, and that is nothing but its waste paper value.   The obligation value of the note would be nothing to defendant as he is the obligor in the note.

III.   Finally, plaintiff's judgment in this proceeding can not be sustained upon any possible view of the facts, for the reason that a general creditor can not invoke the provision of session acts 1891, now section 3710, Revised Statutes 1899, in this character of an action, to invalidate a pledge, given by his debtor to a third party to secure an obligation upon which usury has been exacted by that third party.   That is a privilege conferred by statute upon the debtor alone or upon him and his privies in estate or blood, but is unavailing to a creditor or stranger.   So then in that view, if the $3,700 note in controversy be considered as an asset of defendant in the hands of the garnishee as a pledge to secure the payment of a two thousand dollar obligation of defendant upon which usury has been exacted by the garnishee, the plaintiff can not avail himself of that fact, and have the pledge in garnishee's

hands invalidated by invoking the provisions of section 3710, Revised Statutes 1899, *supra,* and for that reason obtain an order that same be turned into court for his benefit as a general creditor of defendant's. From every and any point of view the case may be considered, the judgment rendered by the trial court therein was erroneous, and same should be reversed, and it is so ordered. *Brace, P. J.,* and *Marshall, J.,* concur in result and in paragraph one and two of the opinion. *Valliant, J.,* not sitting.